**John F. HOUCK, Jr., Plaintiff,**

v.

**CITY OF PRAIRIE VILLAGE, Charles F. Grover and Barbara Vernon, Defendants.**

No. 95–4066–RDR.

United States District Court, D. Kansas.

Sept. 27, 1996.

---

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for plaintiff.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Mark D. Katz, Sherman, Taff & Bangert, P.C., Leawood, KS, Steven D. Steinhilber, Thaddeus J. McDonald, III, Sherman, Taff & Bangert, P.C., Kansas City, MO, for City of Prairie Village.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for Charles F. Grover.

Lawrence L. Ferree, III, Kirk Thomas Ridgway, Ferree, Bunn & O'Grady, Chtd., Overland Park, KS, for movant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon defendant Grover's motion for reconsideration of this court's order upon his motion to dismiss or for summary judgment and defendant Grover's second motion for summary judgment. The court shall consider the two motions together in the context of the additional uncontroverted facts set forth in the second summary judgment motion.

*Uncontroverted facts*

The following facts appear to be uncontroverted. On February 5, 1994 at approximately 4:20 p.m., the City of Prairie Village police department received a 911 call from plaintiff's wife, Sherry Houck. She indicated that a gun had been fired in the residence she shared with plaintiff. At the time, plaintiff was a police officer for the City of Prairie Village. Plaintiff's wife was a former dispatcher.

Officer Robert Thomas was the first police officer to arrive at plaintiff's house. He arrived at about 4:30 p.m. He noticed plaintiff trying to leave in his car. Plaintiff stated: "I'm leaving. Don't try to stop me." Plaintiff also stated that there was no way out for

him—that the job was all he had and now that was gone. Plaintiff further said that the weapon had discharged accidentally.

Officer Wesley Jordan, the supervising officer at the scene, and Officer Craig Caster, arrived shortly after Officer Thomas. One or all of the officers persuaded plaintiff to exit his car. Plaintiff left the car angrily and proceeded toward his house. Plaintiff is a large man, more than six feet tall and more than 220 pounds.

The police officers instructed plaintiff not to reenter his house. Plaintiff told the officers: "If you try to get in my way, I will take you all out." The officers tried to obstruct plaintiff's path to the front door. In response, plaintiff pushed Officer Thomas off the front porch of the house and into some bushes. Plaintiff relented before he entered the house. The police officers detained him. The decision was made to arrest and charge plaintiff with battery on a law enforcement officer and with domestic battery. The court has already ruled that there was sufficient evidence to support plaintiff's arrest on these charges.

Plaintiff was transported to the Prairie Village police station shortly before 5:00 p.m. While plaintiff was at the police station, he acted depressed and emotionally upset. He cried at times. However, he was not hysterical, incoherent or disoriented. He told the police inconsistent stories about the firing of the gun. He said: that the gun went off accidentally when he was cleaning it; that the gun discharged when he was playing with it; and that he put the gun to his chin but flinched at the instant before the gun fired. The last remark was made in a written statement that plaintiff gave at the police station. It was the first direct indication that plaintiff had tried to take his life. Plaintiff started writing the statement at 5:30 p.m.

Plaintiff may have had alcohol on his breath, but it was not clear whether he was intoxicated.

Plaintiff told Officer Thomas at the police station that there was "no way out" for plaintiff. He also asked Thomas for help and made some other suicidal remarks. These remarks were mentioned in Thomas' written

report. Officer Jordan read the report at about 6:30 p.m. Before the events of February 5, 1995, Officer Jordan knew plaintiff had a history of mental illness and depression.

Defendant Grover, the police chief of Prairie Village, also knew of plaintiff's history of mental illness, including prior attempts at suicide. He stopped by the police station at about 5:30 p.m. and remained for 30 to 45 minutes. He was informed by other police officers of plaintiff's emotional state. But, he did not speak with plaintiff or give any special directions regarding plaintiff's treatment.

Plaintiff was taken by employees of the Johnson County Sheriff's Department to the Johnson County Detention Center at about 6:55 p.m. At this point, plaintiff was in the custody of the Johnson County Sheriff, and defendant Grover had no authority over plaintiff's care and treatment. The Johnson County Sheriff's employees were informed by police officers that plaintiff might try to hurt himself and that the police were concerned for his safety. Plaintiff was put on a suicide watch at the detention facility. Plaintiff was released from the Johnson County Detention Center on February 7, 1994 at 2:34 p.m. He then entered a hospital.

While plaintiff was in custody at the police station, he was not handcuffed or kept in a holding cell.

The custom and practice of the Prairie Village police department at the time in question was to take a person to a mental health facility if that person was exhibiting bizarre behavior. The department had no written policies regarding the decision to take someone to a treatment facility for mental illness. However, the police officers had some training from the police academy and a field training program as to when to take a person to a psychiatric care facility. The decision was at the discretion of the police officer.

*Plaintiff's claims*

Plaintiff has made two claims against defendant Grover in this case. Plaintiff contends that on February 5, 1995 defendant Grover was responsible for the failure to take plaintiff to the hospital where his mental illness could be treated either before or after plaintiff was arrested. Plaintiff asserts that the failure to immediately hospitalize plaintiff constituted outrageous conduct under Kansas common law and violated plaintiff's due process rights as enforced under 42 U.S.C. § 1983.

*Summary judgment standards*

The standards for considering a summary judgment motion were summarized in *Wilson v. Meeks*, 52 F.3d 1547, 1551–52 (10th Cir. 1995):

Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110–11 (10th Cir.1991); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

Upon a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to produce evidence creating a genuine issue of material fact to be resolved at trial. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). To avoid summary judgment, the non-moving party must present more than "a mere scintilla of evidence." *Id.* There must be enough evidence to allow a reasonable jury to find for the non-moving party. *Id.* The non-movant "may not rest upon mere allegations or denials" of the pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)), but must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

*Outrage*

We will first consider whether summary judgment should be entered against

plaintiff's claim of outrage as it applies to defendant Grover. The primary question before the court is whether defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. See *Fusaro v. First Family Mortgage Corporation, Inc.*, 257 Kan. 794, 897 P.2d 123, 131 (1995). Recovery is allowed under Kansas law for conduct "so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

Plaintiff had been arrested on charges of domestic battery and battery on a law enforcement officer. We assume that defendant Grover was aware of plaintiff's history of depression, suicide attempts and psychiatric counseling. We further assume, although this may be stretching the evidence in the record, that defendant had knowledge that plaintiff may have attempted suicide with a firearm shortly before his arrest and that he was suffering from acute depression. We also assume that defendant had not established specific standards in his department regarding medical or psychiatric treatment for persons under detention.

Plaintiff's argument is that it was outrageous to arrest plaintiff and send him to the Johnson County Detention Facility without assessing plaintiff's need for medical or psychiatric treatment and responding to his need for such treatment by referring him for psychiatric care.

We assume plaintiff's recovery from the mental illness he was suffering was made more difficult because of his immediate incarceration and delay in receiving treatment. However, we do not believe arresting plaintiff and then transferring his custody to the Johnson County authorities within a short period of time without referring him for immediate psychiatric care, can reasonably be considered so extreme and intolerable as to be outrageous to the average citizen.

In making this decision, we note, in addition to the above-mentioned facts, other points which in our opinion mitigate against a finding that defendant Grover's conduct was indecent or outrageous. First, defendant Grover was informed of but not affirmatively involved in the decisions regarding plaintiff. Second, defendant Grover and his subordinates exhibited and expressed concern regarding plaintiff's well-being; this was a factor in plaintiff's treatment by the Johnson County authorities. Third, plaintiff was detained by the Prairie Village police department for only a short period of time; defendant Grover did not have authority over the treatment of plaintiff after he was transferred to the Johnson County facility. Finally, we note the obvious fact that neither defendant Grover nor his subordinates are medical or psychiatric professionals trained to distinguish the levels and nuances of mental and emotional distress.

Therefore, upon the motion for reconsideration and defendant Grover's second motion for summary judgment, the court shall grant summary judgment to defendant Grover upon plaintiff's outrage claim.

*Section 1983*

The court shall next address plaintiff's § 1983 claim against defendant Grover. Plaintiff alleges that his constitutional rights were violated by defendant Grover's failure to train police officers and defendant Grover's failure to refer plaintiff for timely and adequate medical care.

■ The Due Process provisions of the Fourteenth Amendment to the Constitution protect pretrial detainees from deliberate indifference to their medical needs. *Wilson v. Meeks*, 52 F.3d 1547, 1555 (10th Cir.1995). This includes the need for psychiatric care. Cf., *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir.1994) (Eight Amendment rights of convicted detainees include right to psychiatric and mental health care); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986) (same).

■ To prove deliberate indifference, plaintiff must show: 1) actual knowledge of the specific risk of harm or a risk so substantial that knowledge could be inferred; 2) failure to take reasonable measures to prevent the harm; and 3) that the failure to take such measures in light of the knowledge of the risk of harm, justified liability for the consequences of the failure. See *Berry v.*

*City of Muskogee,* 900 F.2d 1489, 1498 (10th Cir.1990) (discussing how to prove deliberate indifference in a case against a municipality for assault upon an inmate in a city jail).

■ The court does not believe there is evidence in the record upon which a reasonable jury could decide that defendant Grover had actual knowledge that the failure to take plaintiff promptly to the hospital would cause plaintiff harm or that defendant Grover was aware of a substantial risk that a failure to take plaintiff to the hospital would cause plaintiff harm. In making these conclusions, the court considers many of the factors mentioned in connection with the analysis of plaintiff's outrage claim.

Defendant Grover did not have medical or psychiatric training. He did not have direct contact with plaintiff. Although he may have been aware of plaintiff's condition through others, there is no reason to find that he had actual knowledge or substantial reason to know that the failure to immediately hospitalize plaintiff would cause plaintiff harm. Plaintiff was under the custody of defendant Grover's department for only two to three hours. Finally, adequate precautions were taken so that plaintiff did not hurt himself.

Similarly, the court believes the risk of not hospitalizing persons exhibiting plaintiff's behavior was not so obvious that defendant Grover should be liable for failing to train his subordinates. A reasonable jury could not find on this record that the risk of harm to arrested persons with plaintiff's characteristics was so obvious to defendant Grover at the time that he was deliberately indifferent to that risk by failing to institute a training regimen which more specifically addressed the situation. Such a finding is required for liability under § 1983 for a failure to train in a case like this. See *Williams v. Lee County,* 78 F.3d 491, 493 (11th Cir.1996) (to prove deliberate indifference there must be notice of a "strong likelihood" of harm in the face of inaction); *Belcher v. City of Foley,* 30 F.3d 1390, 1397 (11th Cir.1994) (failure to train can amount to deliberate indifference when the need for more or different training is obvious); *Berry,* 900 F.2d at 1498 (must have knowledge of specific risk of harm or that risk was so substantial that knowledge can be inferred); *Estate of Olivas v. City and County of Denver,* 929 F.Supp. 1329, 1337 (D.Colo.1996) (same).

■ Finally, defendant Grover has raised the defense of qualified immunity in this matter. This defense provides further grounds for summary judgment. The Tenth Circuit has described plaintiff's burden when the qualified immunity defense is raised on a motion for summary judgment.

Once the affirmative defense of qualified immunity is asserted, the plaintiff bears the burden of coming forward with facts "sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988). To survive a motion for summary judgment, the plaintiff must show the right was "clearly established" in a "particularized" sense. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). One purpose of this requirement is notice; officials cannot "reasonably be expected to anticipate subsequent legal developments" nor "fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Powell* [*v. Mikulecky*], 891 F.2d [1454] at 1456 [ (10th Cir.1989) ] (quoting *Harlow* [*v. Fitzgerald*], 457 U.S. [800] at 818, 102 S.Ct. [2727] at 2738 [73 L.Ed.2d 396] [ (1982) ] ). This court has held that for a right to be "particularized," there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or "clearly established weight of authority" from other courts. *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).

*Wilson,* 52 F.3d at 1552.

Plaintiff has not demonstrated that it was clearly established in 1994 that a police chief would be deliberately indifferent to a serious medical need if he failed to instruct or train his officers to hospitalize a person under arrest for battery, who was suffering from depression, who had made some suicidal statements, who may have attempted suicide, but who did not appear delusional, hysterical

or disoriented. Drawing from a number of prison suicide cases, we believe that even if there was a factual question of deliberate indifference in this case, it is certain that defendant Grover violated no clearly established right in 1994. Cf., *Haney v. City of Cumming*, 69 F.3d 1098, 1102–03 (11th Cir. 1995) *cert. denied,* — U.S. —, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996) (qualified immunity for officers who were aware of decedent's suicide gestures but did not inform officers of jail where decedent was transferred prior to suicide); *Belcher,* 30 F.3d at 1398 (qualified immunity for officers who failed to take decedent to hospital, retrieve medication or contact psychiatrist, but who took other steps to prevent suicide); *Estate of Olivas,* 929 F.Supp. at 1335 n. 8 (qualified immunity for a defendant without direct knowledge of suicide threat and another defendant who had no direct contact with decedent, but qualified immunity denied for officer with direct knowledge and contact who failed to tell other officers of the danger).

The court believes these cases demonstrate that even in the case of suicide where the risk or danger of failing to understand and react to symptoms is clear, there are instances where this failure is not clearly established as deliberate indifference. In the instance of depression, the court believes it is much more difficult to understand and react to symptoms and to be alert to the possibility of ignoring or exacerbating a serious medical condition. In the case at bar, we do not believe it was clearly established that Chief Grover's action or inaction in failing to immediately hospitalize plaintiff or train his subordinates to do so amounted to deliberate indifference to a medical need. Therefore, he is entitled to qualified immunity from liability.

Because the record on summary judgment does not offer sufficient proof of deliberate indifference to a medical need and plaintiff had not shown that defendant Grover violated a clearly established right, the court shall grant defendant Grover's motion for reconsideration and second summary judgment motion as it applies to plaintiff's § 1983 claim.

*Conclusion*

For the above-stated reasons, the motion for reconsideration and the second summary judgment motion of defendant Grover are granted.

**IT IS SO ORDERED.**