Mary Anton JONES, Aaron Kirby, John Bush, Jerry Carbrey, Al Haverty, Joseph Keating, Mark Lehmann, Robert Moody, Aron Olivera, Philip Hemphill and Sandy Warner, Plaintiffs,

v.

Michael WILDGEN, David Corliss, Barry Walthall, Victor Torres, David Dunfield, Sue Hack, Marty Kennedy, Mike Rundle, Jim Henry, Erv Hodges, all in their individual and official capacities, City of Lawrence, Kansas, Lee Smith, Shawn Murphy, Brian Jiminez, and John Doe, all in their individual and official capacities, Defendants.

No. CIV.A.03–2369–KHV.

United States District Court, D. Kansas.

June 2, 2004.

Christopher R. P. Miller, Little & Miller Chtd., Lawrence, KS, for Plaintiffs.

Gerald L. Cooley, Randall F. Larkin, Gilliland & Hayes, P.A.—US Bank Tower, Lawrence, KS, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendants' *Motion To Dismiss* (Doc. # 19), filed September 16, 2003, for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For reasons stated below, defendants' motion is sustained.

### Standards For Motions To Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume as true all well pleaded facts in plaintiffs' complaint and view them in a light most favorable to plaintiffs. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The Court must make all reasonable inferences in favor of plaintiffs. *Zinermon,* 494 U.S. at 118, 110 S.Ct. 975; *see also* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colo.,* 988 F.2d 97, 98 (10th Cir.1993). The Court, however, need not accept as true those allegations that are conclusory in nature, *i.e.* which state legal conclusions rather than factual assertions. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). The issue in reviewing the sufficiency of plaintiffs' complaint is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927

F.2d 1111, 1115 (10th Cir.1991). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved. *Hall,* 935 F.2d at 1110.

### Facts

■ On a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of certain facts without converting the motion to one for summary judgment. *See Cruz v. Melecio,* 204 F.3d 14, 21 (1st Cir. 2000); *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999); *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994); *Davis v. United Student Aid Funds, Inc.,* 45 F.Supp.2d 1104, 1106 (D.Kan.1998); *see also GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10th Cir.1997) (if document is referred to in complaint but not attached to it, and is central to plaintiff's claim, defendant may submit indisputably authentic copy to be considered on motion to dismiss). Accordingly, the following facts are taken from plaintiffs' *First Amended Complaint* (Doc. # 3) filed August 12, 2003 and from portions of the City Code, which defendants filed as exhibits to their motion to dismiss.

The City of Lawrence ("the City") is a municipal corporation under the law of the State of Kansas. The City adopted ordinances which impose occupancy limits on residential rental property in areas which are zoned for single family residences. Ordinance Nos. 7323, 7326 and 7478, codified at Chapter VI, Article 13 of the City Code. The ordinances provide that except for owner-occupied property, no single-family dwelling in an RS (single family) zoning district shall be leased for occupancy by more than three unrelated persons who do not constitute a family. Violations are municipal offenses and may cause an owner's rental license to be revoked. The preamble to Ordinance No. 7326 includes the following findings by the governing body of the City of Lawrence:

> [T]he general public health, safety and welfare of the community is preserved and sustained with reasonable regulations designed and enforced to encourage the nuisance-free and peaceable enjoyment of residents in single family neighborhoods; and
>
> [t]he City has extensive regulations to ensure appropriate review of certain multiple family dwelling units prior to construction of such multiple family dwelling units, including but not limited to site plan review for such units, such regulations not being generally applicable to single family structures in single family zoning districts; and
>
> [A]dditional reasonable regulation of the rental of dwellings in single family residential zoning districts is necessary and appropriate for the general public health, safety, and welfare; [and]
>
> [T]he public health and safety of tenants living in rental single family dwellings is enhanced with licensing and regulatory requirements on rental dwellings in single family zoned districts[.]

Ordinance No. 7326 at 1, Exhibit B to *Defendants' Memorandum In Support* (Doc. # 20) filed September 16, 2003.

Section 6–1302 requires that every owner of a single-family dwelling in an RS zoning district obtain an annual rental licensing permit before leasing it to an unrelated person. The permit is valid for one year if the $25.00 licensing fee is paid and the owner and the property are in compliance with the code. City Code Section 6–1302, Exhibit C to *Defendants' Memorandum In Support.* The property must be inspected at least once every three years to ensure compliance, Section 6–1304, and the City may revoke a rental permit where violation of any of the following ordinances is found to adversely affect

the public safety of tenants or the rights of nearby residents to the quiet enjoyment of their property:

(A) Noise Ordinance;

(B) Environmental Code;

(C) Anti-litter ordinance;

(D) Zoning Code;

(E) Disorderly House Nuisance Ordinance;

(F) Uniform Housing Code.

Section 6–1305 (internal citations omitted).

Under Section 6–1307, public officers may enter, inspect and investigate rental dwellings if they have reasonable cause to believe that the dwellings present unsafe, dangerous or hazardous conditions. Such entry must be "pursuant to the law" and if the building is occupied, the officer must first request entry. If entry is denied, the officer must pursue an administrative search warrant "or other lawful means." Section 6–1307.

Section 6–1308 provides that a rental license may be revoked and that under certain circumstances, the owner may be placed on probation. Specifically, that section provides as follows:

(A) Any person found by the public officer to be in violation of this Article shall be sent a notice of such violation by the public officer. The notice shall be sent by certified mail, postage prepaid, return receipt requested. The notice shall state:

(1) The condition which has caused the violation of this Article;

(2) Whether the proposed enforcement action is to place or continue the permittee or person on a probation status or whether the proposed enforcement action is to revoke the license; and

(3) That the person in violation shall have fifteen (15) days from the date of the notice to request in writing a hearing before the governing body on the violation. The request in writing for a hearing before the governing body shall stay pending enforcement actions.

(B) The placement of the owner on probation status shall be to provide a reasonable period of time for the owner to correct or alleviate conditions giving rise to the notice of violation. The probation status may be conditioned by the City with reasonable reporting requirements and time periods for corrections. The failure to successfully complete the requirements of the probation status shall be grounds for the initiation of the revocation of the license granted pursuant to this Article.

(C) The public officer, or the Governing Body upon the conclusion of a requested hearing, shall have the authority to revoke a license granted pursuant to this Article or place the property owner on probation status. In determining whether to revoke the license or place the property owner on probation status, the public officer or the Governing Body shall take into account mitigating circumstances, including the legal authority of the property owner to order the vacation of the property by tenants whose conduct has caused the violation(s).

Section 6–1308.

Violators are subject to fines from $250.00 to $1,000.00, and each day constitutes a separate municipal offense. Section 6–1309. In addition, if "the public health, safety or welfare is harmed or endangered by continued occupancy or habitation," the City may order disconnection of water, sewer and sanitation services after lawful notice to the customer and the property owner. Section 6–1310.

Plaintiffs Mary Anton Jones and Aaron Kirby are former and current tenants of rental property in RS zoning districts. Plaintiffs John Bush, Jerry Carbrey, Al Haverty, Philip Hemphill, Joe Keating, Mark Lehmann, Robert Moody, Aron Olivera and Sandy Warner own rental property in the City. Pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4), Fed.R.Civ.P., each plaintiff brings suit under 42 U.S.C. § 1983 in his or her behalf and on behalf of all others similarly situated, claiming that the ordinances are unconstitutional on their face and as applied.[1]

Plaintiffs allege that as applied to them and other class members:

33. ... City inspectors issue "notices of violations" to owners whose property allegedly fails to comply with the regulatory requirements of the Ordinance. The notices direct the property owners to make various repairs to the property. These repairs often require the owner to expend substantial amounts of money. No time is given for the property owner to remedy the alleged violations before being placed on probationary status, or in the alternative having their rental license revoked, or being subjected to other potential penalties, under the regulatory scheme.

34. ... The notice gives the landlord no time to make the repairs ordered by the inspector before having the rental license revoked or being placed on probation.... At no time prior to the entry and inspection of the Plaintiff's property, do the Plaintiffs have an opportunity for a hearing to contest the inspection and alleged violations.

35. The City has repeatedly subjected the Plaintiffs to wrongful entry, notice of violation and assessment of inspection fees and penalties without providing due process, all in violation of their rights. The City's pattern and practice of wrongfully entering the Plaintiffs' property, and imposing fees and penalties without due process continues to subject the Plaintiffs to Violations of their Federal Constitutional and State statutory rights.

*First Amended Complaint* (Doc. # 3) filed August 12, 2003 ¶ 35.

Plaintiffs sued various officials and employees of the City of Lawrence: Michael Wildgen, City Manager; David Corliss, Director of Legal Services; Barry Walthall, City Building Inspector; Victor Torres, Director of City Neighborhood Resources; David Dunfield, Sue Hack and Mike Rundle, current City Commissioners; Martin A. Kennedy, Jim Henry and Ervin E. Hodges, former City Commissioners; and Lee Smith, Shawn Murphy and Brian Jimenez, City Zoning Inspectors.

## I. Landlord Claims

In Count One, the landlord plaintiffs allege that on their face and as applied, the procedures for enforcing notices of violations and assessing inspection fees deny them procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution. Specifically, they allege that the ordinances deprive them of property without the rights to (a)

---

1. Section 1983 provides as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

be heard, (b) present witnesses, (c) cross-examine adverse witnesses, and (d) contest the inspector's findings before an impartial decision-maker before the City places them on probation or revokes a rental license.

In Count Two, the landlord plaintiffs attack the provisions which limit to three the number of unrelated individuals who may live in a rental dwelling in an RS zone ("the occupancy limit") and impose a $25.00 license fee and a penalty up to $1,000.00 per day for each violation. Plaintiffs claim that these provisions violate their right to substantive due process under the Fifth and Fourteenth Amendments.

In Count Three, the landlord plaintiffs claim that unconstitutional license fees have unjustly enriched the City and ask the Court to order disgorgement.

In Count Four, the landlord plaintiffs allege that on their face and as applied, the ordinances violate their Fifth and Fourteenth Amendment rights to freedom from unreasonable searches and seizures—a claim which the Court construes under the Fourth Amendment.[2] *See* U.S. Const. amend. IV ("[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated").

Count Five alleges that the occupancy limit violates plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments by depriving them of just compensation for the taking of private property.

Count Six alleges that on its face and as applied, the occupancy limit inflicts a disparate impact on plaintiffs, based solely on the classification of their property, and thus violates their Fifth and Fourteenth Amendment rights to equal protection.

Finally, Count Seven alleges that the occupancy limit violates plaintiffs' right to substantive due process under the Fifth and Fourteenth Amendments.

## II. Tenant Claims

In Count One, the tenant plaintiffs allege that the occupancy limit violates their Fifth and Fourteenth Amendment rights to equal protection by forcing landlords to discriminate against them on the basis of age and marital status in violation of unidentified city ordinances and federal and state statutes. *First Amended Complaint* (Doc. # 3) ¶ 66. Count Two claims that the ordinances violate plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendments because they deprive them of privacy "without first requiring the Defendants to obtain a search warrant based on probable cause." *Id.* ¶ 69. Count Three alleges that the inspection scheme violates plaintiffs' procedural due process rights to freedom from unreasonable searches and seizures under the Fifth and Fourteenth Amendment—another claim which the Court construes under the Fourth Amendment. Count Four alleges that the occupancy limit violates plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments "to freely associate with whom they choose."

**2.** Plaintiffs title this claim "Federal Tort Damage Claim: Procedural Due Process" and allege that "the procedures in Chapter VI for enforcing the regulatory schemes violate the procedural due process guarantees of the Fifth and Fourteenth Amendments of the United States Constitution by depriving owners of their right to be free from unreasonable searches and seizures without first due process of law and therefore violate 42 U.S.C. Sec.1983." The Court reads this as a substantive claim that the ordinance violates the Fourth Amendment protection against unreasonable search and seizure, which is incorporated against the states through the Fourteenth Amendment due process clause. *See Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1240 (10th Cir.2003).

Count Five alleges that by creating a disparate impact based solely on age and marital status, the occupancy limit violates plaintiffs' Fifth and Fourteenth Amendment rights to equal protection. Count Six alleges that enforcement of the occupancy limit violates "Anti–Discrimination guarantees of the City, State and Federal Anti–Discrimination Ordinances and Statutes by forcing property owners to discriminate against potential tenants based on age and marital status in violation of federal and state statutes." *Id.* ¶ 84.

## III. Class Action Claims

Landlord and tenant plaintiffs both set forth "Class Action Allegations" which assert that the ordinances deprive property owners of procedural due process with respect to notices of violations and imposition of inspection fees and that plaintiffs represent a class of tenants whose rental units have been or will be inspected, and who have been or will be denied rental housing under the ordinance.

### *Analysis*

Defendants present numerous arguments why, in whole or in part, they are entitled to judgment on the pleadings. The Court begins by addressing the affirmative defenses which apply to most of the counts in the amended complaint. The Court will then discuss the arguments that apply to particular substantive claims.

## I. Claims Asserted Against Individual Defendants In Official Capacities

Defendants argue that because plaintiffs have sued the City of Lawrence, suit against the individual defendants in their official capacities is redundant. Defendants point out that official capacity suits are merely "another way of pleading an action against the entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiffs appear to concede that the Court should dismiss the official capacity claims if such claims may be asserted against the City.

As long as the government entity receives notice and an opportunity to respond, an official capacity suit is treated as a suit against the entity. *Id.* at 165–66, 105 S.Ct. 3099. In suits in which a government entity is a party, the Court has previously dismissed official capacity claims against individuals. *See Sims v. Unified Gov't of Wyandotte County,* 120 F.Supp.2d. 938, 945 (D.Kan.2000) (where plaintiff sues both municipality and municipal officers in official capacities, suits against officers are redundant and should be dismissed). The Court therefore dismisses all claims against the individual defendants in their official capacities.

## II. Claims Against Individual Defendants In Individual Capacities

### A. *Absolute Legislative Immunity*

David Dunfield, Sue Hack, Mike Rundle, Martin Kennedy, Jim Henry and Ervin Hodges, current and former City Commissioners, assert that to the extent plaintiffs seek to hold them liable for enacting ordinances now codified in Chapter VI, Article 13 of the City Code, they are entitled to absolute legislative immunity.

The principle of legislative immunity for legislators has been long established. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 405, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (regional legislators); *Tenney v. Brandhove,* 341 U.S. 367, 372, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (state legislators). In *Bogan v. Scott–Harris,* 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), the Supreme Court held that under Section 1983, local legislators are absolutely immune from suit for their legislative activities.

Plaintiffs agree that defendants are immune for their role in enacting municipal ordinances, and the Court finds that as a matter of law, the City Commissioners were engaged in legislative acts when they did so in this case. These defendants are therefore entitled to absolute legislative immunity with regard to plaintiffs' individual capacity claims against them.

### B. *Qualified Immunity*

All individual defendants claim that they are entitled to qualified immunity on each claim against them in their individual capacities. Plaintiffs disagree, broadly arguing that they have asserted violations of clearly established statutory and constitutional rights. *See Memorandum In Support Of Response To Motion To Dismiss* (Doc. # 23) filed October 6, 2003 at 6–7 (citing Fourth and Fourteenth Amendments and *Camara v. Mun. Court of City & County of San. Fran.*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)).

■ "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988); *see also Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). The doctrine of qualified immunity serves the

goals of "protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

To determine whether plaintiffs can overcome the qualified immunity defense, the Court first determines whether plaintiffs have asserted a violation of a constitutional or statutory right. *Roska*, 328 F.3d at 1239. The Court then decides whether that right was clearly established such that a reasonable person would have known that the conduct violated that right. *Id.* (citing *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir.1996)). Order is important; the Court must decide first whether plaintiffs have alleged a constitutional violation, and only then proceed to determine whether the law was clearly established. *Roska*, 328 F.3d at 1239 (citing *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Plaintiffs allege that defendants' "unconstitutional and illegal actions generally arise from the adoption of Article 13 of Chapter VI of [the City Code] enacted by the Lawrence City Commission." *See First Amended Complaint* (Doc. # 3) ¶ 30. As noted, however, to the extent plaintiffs allege that the very enactment of Article 13 violated their federal rights, the individual commissioners are entitled to legislative immunity.

■ Plaintiffs do not allege specific conduct by which non-legislator defendants (Wildgen, Corliss, Walthall, Torres, Smith, Murphy, Jiminez and John Doe) violated plaintiffs' constitutional rights.[3] Plaintiffs must allege facts sufficient to establish that each individual defendant personally

---

**3.** Wildgen, Corliss, Walthall and Torres are City Manager, Director of City Services, City Inspector and Director of City Neighborhood Resources, respectively. Defendants Smith,

Murphy and Jiminez are zoning inspectors. John Doe, who is described as a city employee since January 1, 2000, is not more specifically identified in the amended complaint.

participated in the alleged violations. *See Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996); *Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir.1976). Plaintiffs' allegations do not do so and on this complaint, these individual defendants are entitled to qualified immunity. **If plaintiffs wish to amend their complaint to overcome the defense of qualified immunity, the Court will consider an appropriate motion filed no later than June 18, 2004.**

### III. Claims Against The City

The City asserts that each claim against it must be dismissed for failure to state a claim. Although the amended complaint sets forth 14 separate counts, most of them assert that on its face and as applied, Chapter VI, Article 13 of the City Code violates one of three rights: procedural due process, equal protection or substantive due process. The Court therefore first addresses plaintiffs' claims as to these rights.

### A. *Procedural Due Process*

#### 1. *Landlord Plaintiffs*

The landlord plaintiffs claim that on its face and as applied, the City Code violates their rights to procedural due process. Specifically, they claim that the procedure for enforcing notices of violations and assessing inspection fees deprives them of property without the rights to be heard, present evidence, cross-examine adverse witnesses and contest the inspector's findings to an impartial decision-maker before the landlords are placed on probation or their rental licenses are revoked. (Count One). The landlord plaintiffs claim that this same procedure also denies them their Fourth Amendment right to be free from unreasonable searches and seizures (Count Four).[4]

#### a. *Facial Challenge*

The Due Process clause of the Fourteenth Amendment protects against governmental deprivations of "life, liberty, or property" without due process of law. U.S. Const. amend. XIV; *see Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In determining whether an individual has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected liberty or property interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process. *Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1135 (10th Cir.1994) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

The threshold issue is whether plaintiffs have asserted a protected property or liberty interest. *See Graham v. City of Okla. City,* 859 F.2d 142, 144 (10th Cir.1988) (per curiam). The Constitution does not create or define the contours of "liberty" or "property," the "broad and majestic terms" enshrined in the Fourteenth Amendment. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, these interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. 2701; *see Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (liberty and property interests attain constitutional status if initially recognized and protected by state law); *Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1149 (10th Cir.2001).

---

**4.** As noted, the gist of Count Four is not due process but the Fourteenth Amendment, which incorporates the Fourth Amendment as against the states. *See Roska,* 328 F.3d at 1240. The Court analyzes it accordingly, below.

The City argues that the landlord plaintiffs have not alleged a deprivation of property interests. It does not argue that landlord plaintiffs have failed to allege the denial of a protected liberty interest, and indeed, the landlord plaintiffs allege that they have a liberty interest in protection from confiscation of property through excessive fines.[5] The landlord plaintiffs specifically allege that the ordinance forces them to pay annual license fees of $25.00 and, if their rental license is revoked, loss of use of rental property.

 Procedural due process rights do not apply to legislation of general applicability. *See L C & S. Inc. v. Warren County Area Plan Comm'n.*, 244 F.3d 601, 602 (7th Cir.2001) (suggesting that "legislative due process" is oxymoron). Consequently, the $25.00 license fee is not subject to attack on grounds of procedural due process. Fines, however, can implicate procedural due process rights. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Generally, to prevent "substantively unfair or mistaken deprivations," individuals must receive notice and an opportunity to be heard before the government deprives them of property. *Id.* at 48, 53, 114 S.Ct. 492 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)); *see also Samuels v. Meriwether*, 94 F.3d 1163, 1166–67 (8th Cir.1996) (notice of building problem and opportunity to appear before municipal board satisfies procedural due process). *James Daniel Good*, 510 U.S. at 53, 114 S.Ct. 492. To state a procedural due pro-

cess claim, plaintiffs must show that the government process which they must follow is insufficient to properly protect their ownership rights. *See Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 856 (10th Cir.1993); *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir.1998). The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures. *Winters*, 4 F.3d at 856.

 In this case, the ordinance obligates the City to notify an owner by certified mail of any violation and proposed enforcement action. The owner has 15 days from the date of the notice to request a hearing. A request for a hearing stays any enforcement action. A violation of the ordinance may cause the landlord to be placed on probation or have his rental license revoked, thus denying him the use of his property for rental purposes.

 In determining what process is due, courts must balance (1) the private interests that will be affected by the official action, (2) the risk of erroneous deprivation, and (3) the government's interest, including the fiscal and administrative costs of additional process. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As to the first factor, the private interest here is plaintiffs' interest in avoiding daily fines of up to $1,000.00 and loss of use of rental property. These interests are substantial. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645–47 (7th Cir.1982) (because automobiles occupy central place in lives of Americans,

5. The landlord plaintiffs also allege that they have a liberty interest in being treated like similarly situated property owners, and in freedom from unreasonable searches and seizures. The first articulated liberty interest, which deals with unequal treatment, is more properly dealt with in the equal protection context, and the Court addresses it below. To the extent plaintiffs assert a liberty interest in

freedom from unreasonable searches and seizures, the more specific Fourth Amendment analysis is controlling. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (where Bill of Rights applicable to states under Fourteenth Amendment provides textual source of Constitutional protection, amendment must be used to analyze claim).

plaintiff had substantial interest in prompt hearing on whether car was seized without probable cause); *cf. Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487 (interest in retaining employment until hearing "compelling"); *Mackey v. Montrym,* 443 U.S. 1, 2, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (plaintiff's interest in continued possession and use of driver's license, pending outcome of hearing, not compelling in light of further post-suspension hearing and limit of 90–day suspension). As to the risk of erroneous deprivation, a landlord who receives notice of a violation is entitled to a hearing within 15 days and all fines and permit actions are stayed during that time. If these procedures are followed, the risk of erroneous deprivation is minimal. *See Herrada v. City of Detroit,* 275 F.3d 553 (6th Cir.2001); *Horn v. City of Chicago,* 860 F.2d 700 (7th Cir.1988).

 As for the third factor, the Court must consider both the government interest in the policy that the state action advances and the government interest in minimizing administrative and fiscal burdens. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. Here, the ordinance advances a policy of ensuring safe housing—a policy which directly serves the government interest in health and welfare. *See Chernin v. Welchans,* 844 F.2d 322, 329 (6th Cir. 1988) (government has substantial interest in ensuring adequate housing conditions). By providing a hearing only when a landlord requests one, the City reduces the administrative and fiscal burdens of enforcement. The ordinance therefore provides for a hearing. It does not specifically stipulate that the hearing must include the opportunity to be heard, present evidence, cross-examine adverse witnesses and contest adverse findings, and plaintiffs assert that as a matter of procedural due process, they are entitled to such rights. The due process clause requires an opportunity for a hearing appropriate to the nature of the case. *Mullane v. Cent. Han-*

*over Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Absent specific statutory language to the contrary, courts generally infer that a hearing includes the right to present evidence, cross-examine adverse witnesses and contest adverse findings. *See Califano v. Yamasaki,* 442 U.S. 682, 691, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (Supreme Court assumes fair procedure absent statutory language to contrary); *Kan. City, Kan. Fraternal Order of Police v. City of Kan. City, Kan.,* 620 F.Supp. 752, 758 (D.Kan.1984) (in response to facial challenge, inferring that ordinance requires hearing even though text did not explicitly provide for one). Absent language to the contrary, the Court therefore presumes that the ordinance requires a hearing at which landlords have the right to be heard, to present evidence, to cross-examine adverse witnesses and contest adverse findings. Plaintiffs do not set forth an actionable claim that on its face Section VI of the City Code violates their constitutional rights by subjecting them to license fees and depriving them of their right to use of their property for rental purposes without procedural due process of law (Count One).

b. *As Applied*

 The landlord plaintiffs allege that as applied, the ordinance operates as follows and thus violates their rights to procedural due process:

33. Under Chapter VI, Article 13, City inspectors issue "notices of violations" to owners whose property allegedly fails to comply with the regulatory requirements of the Ordinance. The notices direct the property owners to make various repairs to the property. These repairs often require the owner to expend substantial amounts of money. No time is given for the property owner to remedy the al-

leged violations before being placed on probationary status, or in the alternative having their rental license revoked, or being subjected to other potential penalties, under the regulatory scheme.

34. ... The notice gives the landlord no time to make the repairs ordered by the inspector before having the rental license revoked or being placed on probation.... At no time prior to the entry and inspection of the Plaintiff's property, do the Plaintiffs have an opportunity for a hearing to contest the inspection and alleged violations.

35. The City has repeatedly subjected the Plaintiffs to wrongful entry, notice of violation and assessment of inspection fees and penalties without providing due process, all in violation of their rights. The City's pattern and practice of wrongfully entering the Plaintiff's property, and imposing fees and penalties without due process continues to subject the Plaintiffs to Violations of their Federal Constitutional and State statutory rights.

*First Amended Complaint* (Doc. # 3) ¶ 35. They also allege that the City (through its procedure for enforcing notices of violations and assessing inspection fees) has denied them their rights to be heard, to present evidence, to cross-examine adverse witnesses and to contest adverse findings. *Id.* ¶ 38.

Defendants assert that this claim is conclusory, in that the landlord plaintiffs do not specifically allege how application of the ordinance has violated their rights to procedural due process. *See Sims,* 120 F.Supp.2d at 950 (pleading must state facts upon which plaintiffs' claims rest). The Court agrees, and finds that this claim should be dismissed with leave to amend. In any amended complaint, plaintiffs shall set out the following details: (1) which landlord plaintiffs received notices of violations and when; (2) what repairs the notices required and by what date; (3) whether any such landlord plaintiffs sought a hearing; (4) whether any particular landlord plaintiff was placed on probationary status, had a license revoked or suffered fines or other sanctions; (5) whether any particular landlord plaintiff received a hearing and if so, when the hearing was held and what the result was; and (6) which landlord plaintiff was subjected to wrongful entry, when, and why the entry was wrongful (Count One).

### 2. *Tenant Plaintiffs*

The tenant plaintiffs invoke their rights to procedural due process under two theories: (1) that the ordinance deprives them of privacy "without first requiring the defendants to obtain a search warrant based on probable cause" (Count Two); and (2) that the enforcement procedures deprive them of their right "to be free from unreasonable searches and seizures without first due process of law" (Count Three). These claims actually implicate plaintiffs' Fourth Amendment rights to protection from unreasonable searches, and their rights of privacy. The Court analyzes these claims separately, below.

### B. *Equal Protection*

### 1. *Landlord Plaintiffs*

The landlord plaintiffs claim that on its face and as applied, the occupancy limit classifies landlords according to the location of their property and has a disparate impact on landlords in RS zoning districts in violation of their rights to equal protection (Count Six). The City asserts that this claim is legally insufficient.

The equal protection clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend. XIV, Equal Protection Clause. When the government treats plaintiffs differently than it treats similarly situated individuals, it implicates plaintiffs' right to equal protection. *See Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Courts have devised the following standards to determine the validity of official action which is challenged on equal protection grounds:

The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes. The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution.

*Id.* at 440, 105 S.Ct. 3249 (internal citations omitted).[6] If plaintiffs do not allege discrimination against a suspect class or that the classification burdens a fundamental right, the City only needs a rational justification for its actions. *Watson v. City of Kan. City, Kan.,* 80 F.Supp.2d 1175, 1190 (D.Kan.1999) (citing *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996)). Examples of a "fundamental right" include the right to vote, the right of interstate travel, the rights guaranteed by the First Amendment, and the right to procreate. *Friedman v. Beame,* 558 F.2d 1107, 1112 n. 9 (2d Cir.1977); *see McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 336 n. 1, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (free speech is fundamental right); *Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (right to vote is fundamental right). A person does not have a fundamental right to use property or have it zoned any way he or she wishes. *Frazier v. City of Grand Ledge, Mich.,* 135 F.Supp.2d 845, 852 (W.D.Mich.2001) (so long as city had rational basis for denying zoning change, equal protection challenge failed).

▮ The City first asserts that plaintiffs have not alleged differential treatment. The pleadings could be more explicit on this point, but the landlord plaintiffs apparently complain that as rental property owners in RS districts, they are treated differently than rental property owners in other districts. The differential treatment is that owners in RS districts must obtain permits and obey occupancy limits, whereas owners in

---

**6.** Courts also review legislative classifications based on gender and illegitimacy at a heightened level of scrutiny. *See Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (general classifications fail unless "substantially related" to sufficiently important government interest); *Mills v. Habluetzel,* 456 U.S. 91, 99, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (illegitimacy classification survives if "substantially related" to "legitimate state interest"). *Cf. Mass. Bd. Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (declining to extend heightened review to differential treatment based on age). Neither classification is implicated in this case.

other districts are not required to do so. Plaintiffs have sufficiently alleged differential treatment.

■ The City next asserts that the landlord plaintiffs have not alleged membership in a suspect class or violation of a fundamental right. The Court agrees, and finds that because they have not done so, they must allege that the City's action is not rationally related to a legitimate governmental objective. *See Houck v. City of Prairie Village*, 978 F.Supp. 1397, 1405 (D.Kan.1997). The preamble of Ordinance No. 7326 sets forth the goals of Chapter VI, Article 13: to preserve and sustain the enjoyment of residents in single family neighborhoods, and to enhance the safety of tenants in those areas. The preamble also notes that multiple family dwelling units are subject to extensive review which does not apply to single family rentals, and that the public health and safety will be enhanced by the licensing and regulations of the ordinance. Plaintiffs allege that the stated purpose is a pretext and that the City enacted the regulatory scheme for the specific purpose of "penalizing property owners and raising revenue." *See First Amended Complaint* (Doc. # 3) ¶ 42. The allegation as to penalizing property owners is conclusory, and plaintiffs allege no facts which give rise to any reasonable inference that the City was so motivated. In the entire scheme of City government, the revenue-generating prospects for this ordinance would appear to be insubstantial.[7] Plaintiffs do not specifically allege otherwise, and they suggest no reason why the City would be motivated to enact the ordinance to "penalize property owners." The Court therefore disregards plaintiffs' conclusory allegation that the stated purposes of the ordinance are pretextual and that the City acted for improper purposes. In

cases where a legislative body has specifically set out a legitimate purpose, the court is very reluctant to infer a different, impermissible purpose. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 6, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (court must assume articulated purpose of legislation is actual purpose unless circumstances force conclusion that stated purpose could not have been goal). If the legislative body "could have rationally decided" that the means chosen would promote a stated permissible objective, the Court must uphold the challenged legislation. *Id.* at 466, 101 S.Ct. 715.

■ Maintaining the single family character of neighborhoods is a legitimate public interest. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (upholding zoning ordinance which prohibited two or more persons unrelated by blood, marriage or adoption from living together in district devoted solely to single family dwellings). The Supreme Court has observed that "[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs." *Id.; see generally* Michael J. Davis, Protecting Group Homes For The Non–Handicapped, 46 UKSLR 777 (1998) (*Belle Terre's* holding that local governments have broad discretion to differentiate between residences housing families and those housing unrelated persons still governs federal constitutional law). Enhancing public safety for tenants in homes that otherwise would not be inspected is also a legitimate public interest.

The Supreme Court has held that it is not arbitrary or unreasonable to limit to two the number of unrelated persons who can live together.[8] Consistent with *Belle*

---

7. In any event, raising revenue is a legitimate government purpose.

8. Although the Supreme Court has held that zoning restrictions cannot be applied to hin-

*Terre,* this Court finds that as a matter of law, the occupancy limit in this case is rationally related to the City's stated purpose of maintaining the single family character of the neighborhood. *Cf. City of Cleburne,* 473 U.S. at 452, 105 S.Ct. 3249 (city ordinance requiring permit for residential home for mentally disabled, aimed at avoiding congestion of population, not rational; city could not explain why other group housing did not require permit). The Court therefore dismisses the claim of the landlord plaintiffs that on its face and as applied, the occupancy limit violated their rights to equal protection under the law (Count Six).

### 2. Tenant Plaintiffs

The tenant plaintiffs claim that on its face and as applied, the occupancy limit violates their right to equal protection because it (a) forces landlords to discriminate against them on the basis of age and marital status "in violation of city ordinances, federal and state statutes" (Count One)[9] and (b) has a disparate impact based solely on marital status (Count Five). The City asserts that these equal protection claims are not actionable because plaintiffs have not alleged membership in a suspect class or violation of a fundamental right, and plaintiffs have not shown that the differential treatment is irrational. Again, the Court agrees.

▇▇▇ The tenant plaintiffs allege differential treatment based on age and marital status, but their allegations on these points are conclusory. Plaintiffs do not specify how the ordinance discriminates based on

age or marital status, and absent further elaboration from plaintiffs, the Court will not speculate how age and marital status might be relevant classifications under the ordinance. In any event age and marital status are not suspect classes. *See Murgia,* 427 U.S. at 313, 96 S.Ct. 2562. Plaintiffs must therefore allege that the City's action is not rationally related to a legitimate governmental objective. *See Houck,* 978 F.Supp. at 1405. As noted, however, the City has articulated a legitimate public interest—maintaining the single family character of neighborhoods and enhancing public safety—and the ordinance is rationally related to those goals. The equal protection claims of the tenant plaintiffs are therefore dismissed. Plaintiffs have not alleged that the ordinance is not rationally related to the legitimate public interest which the City has invoked in adopting the ordinance (Counts One and Five).

### C. Substantive Due Process

### 1. Landlord Plaintiffs

The landlord plaintiffs assert that Chapter VI, Article 13 of the City Code violates their rights to substantive due process in two ways: (1) the City enacted the occupancy limit, registration fee and penalty provisions for the specific purpose of penalizing property owners in a certain zoning district and raising revenue to fund Code enforcement, *First Amended Complaint* (Doc. # 3) ¶ 42 (Count Two); and (2) the occupancy limit amounts to a taking without just compensation (Count Five).

---

der those in a family relationship from living together, *see Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 498, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), "if the absence of an occupancy limitation on members of a family who can live together is bootstrapped into the argument that therefore there can be no occupancy limitation for unrelated persons living together, there could never be an occupancy

limitation and *Belle Terre* would be meaningless." *Doe,* 892 F.2d at 321.

9. Count One alleges that Chapter VI discriminates against them on the basis of age and marital status in violation of unspecified "city ordinances, federal and state statutes." Plaintiffs do not identify those laws, and the Court will not attempt to so identify for them.

Count Two appears to assert that plaintiffs have a substantive due process interest in making reasonable use of their property, free from arbitrary and capricious restrictions by zoning laws. Count Five raises a claim for just compensation under the Fifth Amendment or a procedural due process "takings" claim, see *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991), which the Court analyzes in separate discussions below.

As the Tenth Circuit pointed out in *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111 (10th Cir.1991), authority in this circuit is unclear on what interest is required to trigger substantive due process guarantees. *Compare Harris v. Blake*, 798 F.2d 419, 424 (10th Cir.1986) (to claim denial of substantive due process, plaintiff must allege liberty or property interest to which due process guarantees can attach); *Brenna v. S. Colo. State College*, 589 F.2d 475, 476 (10th Cir.1978) (same); *Weathers v. W. Yuma County Sch. Dist.*, 530 F.2d 1335, 1342 (10th Cir. 1976) (same) with *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."). In this case, even if the Tenth Circuit were to recognize a substantive due process right to freedom from occupancy limits, license fees and penalty provisions, plaintiffs do not assert a cause of action on which relief may be granted.

■ In the face of a substantive due process challenge to quasi-legislative or quasi-judicial zoning decisions, absent invidious discrimination, a suspect class or a fundamental interest, courts limit their review to whether the decision was "arbitrary and capricious." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *RRI Realty Corp. v. Southampton*, 870 F.2d 911,

914 n. 1 (2d Cir.1989); *Burrell v. Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987); *Pace Res., Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1034 (3d Cir.1987). Although plaintiffs alleged that the true purpose of the ordinance is to penalize landlords and raise revenue, the Court—for reasons stated above—takes the legislative statement of purpose at face value in this case. Here, the preamble states the goal of the ordinance is to protect the integrity of single family districts. Even viewed in the light most favorable to plaintiffs, the substantive due process claim hardly demonstrates conduct which is arbitrary and capricious. As noted above, the City has articulated a rational basis for the occupancy limit and permit system. The Court therefore dismisses the substantive due process claims based on the occupancy limit, registration fee and penalty provisions (Counts Two and Five).

## D. *Free Association—Tenant Plaintiffs*

The tenant plaintiffs assert that the occupancy limit deprives them of their substantive due process right to freely associate (Count Four). The City asserts that this claim is legally insufficient.

■ The right to free association contains two prongs. One prong encompasses the right to associate for purposes of engaging in activities protected by the First Amendment—speech, assembly, petition for redress of grievances and the exercise of religion. *See Doe v. City of Butler, Pa.*, 892 F.2d 315, 322–23 (3rd Cir. 1989) (challenge to occupancy limit for transitional homes as violation of First Amendment freedom of association) (citing *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). This complaint does not implicate that right. The other prong

recognizes choices by individual "to enter into and maintain certain intimate human relationships." *Doe,* 892 F.2d at 323 (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Reasonable occupancy limits, however, do not violate this prong. *See Doe,* 892 F.2d at 323. As the Third Circuit found in *Doe,* nothing in this case prevents plaintiffs from associating with each other and others similarly situated. Further, in *Belle Terre,* the Supreme Court explicitly rejected an alleged right to associate in a zoning context. *See* 416 U.S. at 7, 94 S.Ct. 1536. The Court finds that the City is entitled to dismissal of the tenant plaintiffs' claim that the occupancy limit violates their right to free association (Count Four).

### E. *Fourth Amendment*

All plaintiffs allege that on its face and as applied, the ordinance allows searches without probable cause in violation of the Fourth Amendment (Counts Three and Four). The City argues that plaintiffs have not stated a valid Fourth Amendment claim.

■ Defendant points out that on its face, Section VI of the City Code requires the inspector to apply for an administrative search warrant if an owner does not agree to inspection, and also requires the City to conduct any search in accordance with the law. *See Harris v. Akron Dep't of Pub. Health,* 10 Fed.Appx. 316, 319, 2001 WL 523553 (6th Cir.2001) (no Fourth Amendment violation where ordinance expressly provided that if entry was refused, inspection would only be conducted as provided by law and would not be construed to require consent to warrantless inspection) (citing *Camara,* 387 U.S. at 540, 87 S.Ct. 1727). Plaintiffs do not address the fact that the ordinance provides only for lawful entry. Plaintiffs have failed to state a claim that on its face, Section VI violates

the Fourth Amendment (Counts Three and Four). Plaintiffs' only as-applied argument is that they do not have an opportunity for a pre-inspection hearing to contest the inspection and alleged violations, and that entry is therefore wrongful. Plaintiffs have not set forth any factual basis for this claim, and it is hereby dismissed as conclusory.

### F. *Fifth Amendment Just Compensation Claim*

■ The Fifth Amendment provides that private property shall not be taken for public use without just compensation, U.S. Const. amend. V, and Count Five claims that Section VI of the City Code takes the property of landlord plaintiffs without just compensation, in violation of the Fifth Amendment. Defendants seek dismissal, arguing that the Fifth Amendment applies only to takings by the federal government. *See Twin Cities Chippewa Tribal Council v. Minn. Chippewa Tribe,* 370 F.2d 529, 533 (8th Cir.1967). The Supreme Court, however, has held that through the due process clause of the Fourteenth Amendment the just compensation clause applies to state governments. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

■ To establish a violation of the just compensation clause, the landlord plaintiffs must demonstrate that their property was "taken," *i.e.* that the regulation "goes too far" and makes no provision to award just compensation. *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 347, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Smithfield Concerned Citizens v. Town of Smithfield,* 719 F.Supp. 75, 77 (D.R.I.1989). The remedy for a violation of the just compensation clause is money damages calculated by the value of the property rights taken and the duration of the taking. For such a claim to be ripe,

the landowners must overcome two hurdles: they must obtain a final decision regarding the application of the zoning ordinance to their property (the final decision hurdle) and they must utilize state procedures which provide for obtaining just compensation (the just compensation hurdle). *Williamson County Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 185–91, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Under the just compensation rule, a Fifth Amendment claim is not ripe until the landowner has pursued all available state procedures to obtain just compensation. *Id.* at 194, 105 S.Ct. 3108. In this case, plaintiffs have not alleged that they utilized a state procedure to obtain compensation. Therefore, their just compensation claim is not ripe.

Plaintiffs may also intend to claim that Section VI so destroys the value of their property as to effect a taking by eminent domain. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Such an application would be an invalid exercise of the police power, and courts sometimes call this a "due process" takings claim. *Id.* at 1030–31, 112 S.Ct. 2886. The final decision requirement applies to due process takings claims, as it does to just compensation claims. *Williamson County,* 473 U.S. at 199–200, 105 S.Ct. 3108 (court cannot determine whether regulation goes too far unless it knows how far regulation goes); *Smithfield Concerned Citizens,* 719 F.Supp. at 81–82. Under the final decision rule, the property owner must seek variances from the applicable regulations, or a hearing and an appeal of any adverse decision. *Id.* at 187–88, 105 S.Ct. 3108. The reason for this rule is that one factor in the adjudication of a takings claim is "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations." *Id.* at 191, 105 S.Ct. 3108. Therefore, if plaintiffs intend to make a due process takings claim, they have not alleged a final decision and the Court must dismiss any such claim for lack of ripeness.

G. *Class Action*

 Defendants finally assert that based on the allegations in the amended complaint, plaintiffs cannot maintain this suit as a class action under Rule 23. *See Briggs v. Aldi,* 218 F.Supp.2d 1260, 1265 (D.Kan.2002). Plaintiffs assert that they have met the basic pleading requirements under D. Kan. Rule 23.1. Generally, the Court does not decide whether plaintiffs can maintain a class action until they file a motion for class certification, as stated in D. Kan. Rule 23.1(b). In this case, however, plaintiffs have not filed a timely motion for class certification.

**IT IS THEREFORE ORDERED** that defendants' *Motion To Dismiss* (Doc. # 19) filed September 16, 2003 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED that on or before June 18, 2004, plaintiffs may file leave to amend their complaint to overcome the defense of qualified immunity, and landlord plaintiffs may file an amended complaint setting forth their as-applied procedural due process claim.**