PROFESSIONAL INVESTMENTS OF
AMERICA, INC. *v.* MCCORMICK. ■

ENSENAT ET AL. *v.* PROFESSIONAL
INVESTMENTS OF AMERICA, INC.

KOROSI, EXR., *v.* PROFESSIONAL
INVESTMENTS OF AMERICA, INC.

UNION COMMERCE BANK *v.*
PROFESSIONAL CONDOMINIUMS OF
AMERICA, INC.

(Nos. 33887, 34375, 37438
and 59147—Decided
May 21, 1984.)

Court of Common Pleas of
Cuyahoga County.

*Mr. Avery S. Friedman,* for Dana
Korosi, Exr.

*Messrs. Fedor & Fedor* and *Mr.*
*Bruce Fedor,* for Professional In-
vestments of America, Inc.

*Mr. Roger D. Heller,* for Joseph Mc-
Cormick.

*Messrs. Endress & Endress* and *Mr.*
*Jeffrey C. Endress,* for Antonio
Ensenat.

*Mr. William E. Blackie,* director of
law, for city of Lakewood.

*Ms. Dorothea J. Kingsbury,* for
Union Commerce Bank, Exr.

JAMES J. MCMONAGLE, J. A series
of cases arose between former tenants
of the Lake House, a high-rise complex
in Lakewood, Ohio, and the owner/land-
lord, Professional Investments of
America, Inc. ("PIA"), as a result of
condominium conversion and the impact
of the Lakewood Residential Con-
dominium Ordinance Section 1327.06.
Said cases have been consolidated for
resolution of the constitutional
challenge; and the city of Lakewood has

been joined as a party for submission of its memorandum on the issue.

The factual background is that upon receiving notice of conversion of the building to condominiums, certain tenants advised PIA that they were terminating their lease pursuant to Lakewood Residential Condominium Ordinance Section 1327.06(e)(1) (hereinafter known as "LRCO 1327.06 [e][1]," or "the LRCO"). That section reads as follows:

"(e) Expiration of Tenancy After Ninety Days from Notice.

"(1) Any tenant whose tenancy expires after ninety (90) days from the date of delivery of such notice of conversion shall have the right to terminate the lease upon forty-five (45) days written notice, without penalty or other termination charge to the tenant. By delivering the notice of termination, the tenant waives the right of first refusal under Section 1327.06(h)."

Considering the tenants' actions to be malicious breaches of the rental agreement, PIA retained security deposits and claimed damages in the form of lost rentals.

On the one hand, PIA contends that LRCO 1327.06(e)(1) is invalid in that it violates both the federal and state constitutional prohibitions against enacting laws which impair the obligation of contracts, and in that it violates R.C. 5321.19 by attempting to regulate the obligations of parties to a rental agreement.

For its part, the city of Lakewood submits that LRCO 1327.06(e)(1) is a valid exercise of local police powers, that the Contract Clause prohibitions do not bar a municipality from exercising its police power in a reasonable way for the general welfare of the community, and that the LRCO is not in conflict with R.C. 5321.19.

Certainly, a court does not arbitrate disputes in a vacuum. It cannot ignore the surrounding circumstances nor the underlying concerns, because these are part and parcel of the concept of fairness. Nowhere is this more evident than where constitutional rights, property interests and human needs clash. Out of these competing forces, a court must fashion a remedy which is realistic and even-handed. This is not an easy task.

During the 1970's, there was a remarkable rise in condominium development and conversion. Historically, a majority of Lakewood's housing has been comprised of rental units; therefore, the condominium trend has had a particular impact on that community.

Also of significance is the make-up of the population of the city of Lakewood. A large number of the individuals renting in the municipality during the crucial time period were over sixty years of age. Obviously this group would be more vulnerable in terms of its income capabilities and relocation abilities.

While engaged in this analysis, this court must be mindful of the presumptive validity accorded to city ordinances. The Ohio Supreme Court, in *Wilson* v. *Cincinnati* (1976), 46 Ohio St. 2d 138, 142 [75 O.O.2d 190], stated the principle as follows:

"Moreover, because municipalities are presumed to be familiar with local conditions and the needs of the community, a court will not substitute its judgment for legislative discretion unless there has been a clear and palpable abuse of power. *Porter* v. *Oberlin, supra* [(1965), 1 Ohio St.2d 143]; *Allion* v. *Toledo* (1919), 99 Ohio St. 416, 124 N.E. 237."

In view of the unique qualities of the Lakewood community as described above, this court is hesitant to impose its mandate upon the parties in the within condominium conversion cases.

The concept upon which this court's inquiry must now focus is police power. In Section 3, Article XVIII of the Ohio

Constitution, the following grant of power is made:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This power has been held to be quite broad and far-reaching. It justifies municipal intervention into safety, good health, comfort, quiet, morals and, generally, the best interests of the public. By its nature, the police power is a fluid and changing entity because it must respond to political and socioeconomic variations. The preamble to LRCO Chapter 1327 recites in part:

"* * * [T]he condominium form of property ownership has become increasingly popular in the City of Lakewood in recent years, and * * * growth in the use of condominium form of property ownership has significant impact on the general welfare and well-being of the citizens of the City of Lakewood, and * * * prospective purchasers of condominium units have often been unable to obtain full disclosure of all information necessary to make the decision to purchase, and * * * standards for the regulation of the sale and operation of condominiums are necessary for the protection and welfare of the citizens of the City of Lakewood * * *. [T]his chapter constitutes an emergency measure providing for the immediate preservation of the public health, safety and welfare of the citizens of the City of Lakewood."

On its face, this ordinance appears to be a valid and reasonable exercise of the police power of the city of Lakewood.

However, PIA submits that the LRCO is unconstitutional as it impairs the obligation of contracts. There would possibly be a constitutional infirmity if the law were enacted after the contract was executed. The United States Supreme Court has grappled with the dilemmas of: What is a contract? What are the obligations of contracts? What elements are read into a contract even though they are not set forth in writing?

"This Court has said that 'the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.' * * *" Home Building & Loan Assn. v. Blaisdell (1934), 290 U.S. 398, 429-430.

Therefore, the LRCO, having been previously enacted into law, is deemed to form part of the lease agreement between PIA and the Lake House tenants. PIA cannot justifiably claim that the operation of the condominium ordinance was an unfair surprise.

Furthermore, simply because an ordinance has an impact (even a detrimental one) does not mean that it is prohibited by the Contract Clause. There is a balancing which must be employed. In Allied Structural Steel Co. v. Spannaus (1978), 438 U.S. 234, 241-242, Justice Stewart made the following observation:

"First of all, it is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' Manigault v. Springs, 199 U.S. 473,

**4**

480. As Mr. Justice Holmes succinctly put the matter in his opinion for the Court in *Hudson Water Co.* v. *McCarter*, 209 U.S. 349, 357: 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.' "

Certainly, the Contract Clause should impose some guidelines on legislation. However, the LRCO possesses attributes which permit it to pass constitutional muster. First, it serves a basic societal interest by regulating the sale and operation of condominiums which are increasingly prevalent on the American scene. Second, the LRCO is structured toward condominium conversion specifically and does not attempt to broadly regulate rental agreements. Last, the impairment of contract is not substantial since the ordinance's notice requirements are generous, and the contractual expectations are not affected because PIA is well-aware of the law's existence.

PIA would also like this court to consider whether or not the LRCO violates R.C. 5321.19 of the Ohio Landlord and Tenant Act. That section reads in part:

"No municipal corporation may adopt or continue in existence any ordinance that is in conflict with Chapter 5321 of the Revised Code, or that regulates those rights and obligations of parties to a rental agreement that are regulated by Chapter 5321 of the Revised Code. * * *"

It is the determination of this court that no conflict exists between the Lakewood ordinance and the above cited statute. As a matter of fact, the LRCO requirements for notice of termination are more strict than the state statute mandates. Furthermore, PIA acknowledged the LRCO and praised its terms in a letter to the tenants. By virtue of that, PIA should not now be permitted to attack the Lakewood ordinance when it suits its purposes.

In conclusion, LRCO 1327.06(e)(1) is valid, reasonable, and constitutional. Therefore, because the tenants are entitled to vacate the premises without penalty, no actions to retain security deposits nor for claimed lost rents may be maintained.

*Judgment accordingly.*