OPINION
{¶ 1} Plaintiff-appellant, Mariemont Apartment Association (the "association"), appeals the trial court's decision declaring an ordinance enacted by defendant-appellee, the village of Mariemont, Ohio, to be constitutional. We find merit in one of the association's assignments of error. Therefore, we reverse the trial court's decision.
 {¶ 2} The record shows that on January 10, 2005, the village adopted Ordinance No. 1-2-05. This ordinance enacted Chapter 154 of the Mariemont Code, which pertains to "Rental of Dwelling Units and the Obtaining of Permits." It applies to all residential dwellings for rent that become vacant after February 1, 2005.
 {¶ 3} The ordinance requires the owner of residential rental property within the village to obtain a rental permit issued by the Office of the Building Commissioner. It applies to units being rented to new tenants or to any unit where the current permit is three years or older. A permit costs $25.
 {¶ 4} The ordinance also requires the building commissioner to conduct an inspection within two business days, at which the owner or a representative must be present. But the inspection cannot occur unless the owner has paid the $25 fee. The commissioner or the commissioner's representative must inspect the dwelling for compliance with the village's previously enacted property-maintenance code, using a checklist prepared by the building department.
 {¶ 5} Once the inspection is completed, the building commissioner shall issue a rental permit to an owner who (1) has paid the permit fee, (2) has filed a written application, (3) has scheduled and attended the required inspections, and (4) is in compliance with all applicable zoning and building codes. If the commissioner cannot certify that a dwelling conforms to the requirements in the checklist, the commissioner may issue a conditional permit if the violations are not an immediate threat to the health, safety, or public welfare of the community, or to any actual or potential inhabitants.
 {¶ 6} A conditional permit must specify the nonconformities and give the owner 30 days to correct them. If the owner fails to correct the specified nonconformities within 30 days, the commissioner must revoke the conditional permit, and the owner must cease renting or seeking to rent the unit and cause it "to be vacated." If a tenant occupies the unit, the owner must notify the tenant that until the owner receives the required rental permit, the tenant may be required to vacate the unit.
 {¶ 7} Upon renting any unit, the owner must furnish the building commissioner with the names of all tenants within seven days of the date of occupancy. Failure to furnish the names results in the revocation of the rental permit and a $25 fine.
 {¶ 8} The ordinance provides that an owner may appeal any action of the building commissioner relating to rental permits to the Board of Building Appeals by filing a notice of appeal within 30 days after receipt of a written notice or letter from the commissioner. It contains no other provisions about appeals. It also states that any owner who rents a dwelling without a valid rental permit or conditional permit is guilty of a minor misdemeanor. Each day of noncompliance constitutes a separate violation for which the village can fine the owner.
 {¶ 9} The association filed a declaratory-judgment action in which it alleged that the ordinance (1) was unconstitutionally vague; (2) criminalized "inherently innocent and harmless conduct"; (3) was "unreasonable in its scope"; (4) did not "bear a real and substantial relationship to the public's health, safety, morals or general welfare"; (5) arbitrarily and unreasonably discriminated between the owners of residential rental property, the owners of commercial rental property, and the owners of residential property not used for rental; (6) invaded tenants' privacy rights; (7) unconstitutionally denied the owners of residential property the rights of equal protection and due process of law; and (8) was "unreasonable and arbitrary." The trial court granted the village's motion for summary judgment and overruled the association's. This appeal followed.
 {¶ 10} The association presents six assignments of error, which we address out of order. We begin our analysis by noting that legislative enactments enjoy a presumption of constitutionality.[1] Courts must liberally construe legislation to save it from constitutional infirmities. The challenging party bears the burden to show that the legislation is unconstitutional.[2]
 CONFLICT WITH THE LANDLORD-TENANT ACT {¶ 11} In its first assignment of error, the association contends that the trial court erred in finding the ordinance to be constitutional, because it conflicts with the general laws of Ohio. The association argues that the ordinance regulates the rights and responsibilities of the parties to residential leases, which is inconsistent with R.C. Chapter 5321, Ohio's Landlord-Tenant Act. This assignment of error is not well taken.
 {¶ 12} The association relies upon R.C. 5321.19, which provides in part, "No municipal corporation may adopt or continue in existence any ordinance * * * that is in conflict with this chapter, or that regulates the rights and obligations of parties to a rental agreement that are regulated by this chapter." But the statute goes on to state, "This chapter does not preempt any housing, building, health or safety code * * * ." The provisions of R.C. Chapter 5321 "are intended to be preventative and supplemental to other remedial measures."[3] They do not limit a court's power and duty to enforce all applicable building, housing, health, and safety codes.[4]
 {¶ 13} State laws only preempt local ordinances to the extent that that are utterly inconsistent with local law, or when the legislature has expressed a clear intention to override local law.[5] The ordinance in this case is consistent with R.C. Chapter 5321, and therefore it is not preempted.[6] Consequently, we overrule the association's first assignment of error.
 PRIVACY {¶ 14} In its third assignment of error, the association contends that the trial court erred in finding the ordinance to be constitutional, because it requires property owners to disclose to the village the identity of tenants, forces landlords to violate the tenants' rights to privacy, and forces them to act as the village's investigators. While the provision requiring the owners to give the tenants' names to the village gives us pause, we ultimately conclude that this assignment of error is not well taken.
 {¶ 15} The right to privacy involves the interest in avoiding disclosure of personal matters and the interest in making certain kinds of important decisions independently.[7] But the right to privacy is not absolute. Privacy of the individual must yield when required by public necessity.[8]
 {¶ 16} The right to privacy encompasses only personal information and information not readily available to the public.[9] Consequently, the Ohio Supreme Court has stated that individuals do not have a legitimate expectation of privacy in their telephone numbers, their names and work addresses, and their resumes.[10] Courts have upheld the sale of the names and addresses of motor-vehicle registrants to direct-mail advertisers.[11] Further, the names and addresses of sexual offenders are not private because they are contained in records that governmental agencies must keep by law.[12]
 {¶ 17} The requirement that landlords provide the names of the tenants to the village does cause us concern. The association's argument that this requirement endangers the safety of tenants, particularly the elderly or single mothers, and could leave them open to identity theft has some validity. Nevertheless, we are not convinced that it is such a violation of the right to privacy that it overrides the village's legitimate interest in regulating rental housing within the village. Certainly, the disclosure of individuals'names and addresses does not rise to the level of the disclosure of their social-security numbers or copies of their tax returns, which courts have held are private information subject to statutory regulation.[13]
 {¶ 18} We agree with the trial court when it stated, "The Auditor's Office and Recorder's Office ha[ve] a plethora of information regarding what property a person owns and who pays taxes on certain property. Law Enforcement entities are entitled to collect vast information regarding citizens. Taxing agencies are entitled to extremely private information regarding citizens. None of the aforementioned situations have been adjudged to be violative of a person's privacy rights."
 {¶ 19} Further, all individuals, whether renters, rental property owners, or private home owners, must generally publicly reveal their residential addresses if they want to receive public or governmental services. No individual has a reasonable expectation of living in complete anonymity, and tenants generally do not have a reasonable expectation of privacy in the location of their residences.
 {¶ 20} Also, a more serious threat to the right of privacy occurs when information is disclosed to the general public.[14] In this case, property owners are required to disclose the information to village officials, not to the general public. Once the information is in the village's possession, it arguably becomes a public record under R.C.149.43(A)(1), which the village must make available for inspection and copying upon request.[15] But an individual must actually seek access to the information.[16] Thus, the risk of direct disclosure to the general public is lessened. This risk is not significant enough to render the ordinance unconstitutional.[17] The ordinance is this case does not bring about such an arbitrary and unreasonable invasion of privacy that we must declare it unconstitutional on that basis. Therefore, we overrule the association's third assignment of error.
 VAGUENESS {¶ 21} In its fourth assignment of error, the association contends that the ordinance violates the Due Process Clause because it is void for vagueness. They argue that it is so ambiguous that an ordinary person cannot tell what conduct is prohibited, and that it allows for arbitrary and discriminatory enforcement. This assignment of error is not well taken.
 {¶ 22} The void-for-vagueness doctrine ensures that individuals can ascertain what the law requires of them. To survive a vagueness challenge, a legislative enactment must be written so that a person of common intelligence can determine what conduct is prohibited. It must also provide sufficient standards to prevent arbitrary and discriminatory enforcement.[18] Courts will not declare a legislative enactment void merely because it could have been worded more precisely.[19]
 {¶ 23} The association claims that the ordinance is vague on its face. Because the ordinance does not implicate First Amendment rights or other constitutionally protected conduct, we must determine if it is vague in all its applications.[20] A statute is vague in all its applications if it does not provide a definitive standard by which to determine which conduct is included and which is excluded.[21]
 {¶ 24} In this case, the ordinance provides a detailed checklist that is based upon a building code previously enacted by the village. The code and the checklist together provide a standard that allows an ordinary person to determine what is prohibited by the ordinance. Further, they do not permit a "standardless sweep" that allows the building commissioner to pursue his or her own "personal predilections."[22] We note that similar housing and building codes have withstood vagueness challenges.[23]
 {¶ 25} We cannot hold that the ordinance is so imprecisely drafted that it provides no standard at all. Therefore, it is not void in all its applications. The association has not met its burden to demonstrate that the ordinance is unconstitutionally vague, and we overrule its fourth assignment of error.
 EQUAL PROTECTION {¶ 26} In its fifth assignment of error, the association contends that the ordinance denies property owners equal protection under the law. It argues that the ordinance improperly distinguishes between landowners who rent property and those who do not, and that the ordinance does not further a legitimate government interest. This assignment of error is not well taken.
 {¶ 27} The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause in the Ohio Constitution is fundamentally equivalent to the federal guarantee and is analyzed under the same standard.[24] When the government treats similarly situated individuals differently, that action implicates the Equal Protection Clause.[25]
 {¶ 28} Since this case involves neither a suspect class nor a fundamental right, we must apply the rational-basis test. Under that test, any law that is rationally related to a legitimate government interest will withstand an equal-protection challenge. In a rational-basis analysis, we must uphold the law unless the classification is wholly irrelevant to the achievement of the governmental entity's purpose.[26] A statutory classification violates equal protection if it treats similarly situated individuals differently based upon an illogical and arbitrary basis.[27]
 {¶ 29} As the trial court found, the purpose of the village's ordinance is to protect the public from "an immediate threat or danger to the health, safety or welfare of the community." This purpose is, without a doubt, a valid subject of the village's police power.[28]
"Miserable and disreputable housing conditions may do more than spread disease and crime and immorality. They may also suffocate the spirit by reducing the people who live there to the status of cattle. They may indeed make living an almost insufferable burden. They may also be an ugly sore, a blight on the community which robs it of charm, which makes it a place from which men turn. The misery of housing may despoil a community as an open sewer may ruin a river."[29]
 {¶ 30} Further, another purpose of the ordinance is to maintain the aesthetics of the community, which the association argues is "a flimsy foundation on which to rest discriminatory enforcement." But the Ohio Supreme Court has held that maintaining the aesthetics of the community is a legitimate governmental interest.[30]
 {¶ 31} The ordinance is rationally related to achieving these goals. It is a reasonable way of using limited enforcement resources and concentrating them where they are likely to be needed.[31] Despite the association's claim to the contrary, property owners who rent their property and those who occupy their property are not similarly situated. Residential rental properties require greater health and safety regulation than other types of property.[32] The governmental interest in protecting the community from unsafe housing is more critical with rental property, which has numerous residents, common areas, and greater access by the general public.[33] Further, the renting of residential property is a business. It is reasonable to require landlords to offset the costs of regulating that business.[34]
 {¶ 32} "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."[35] In the area of social welfare, a municipality may address a problem one step at a time or "select one phase of one field and apply a remedy there, neglecting others."[36] That the ordinance targets rental properties as opposed to owner-occupied properties does not alone render it unconstitutional.[37]
 {¶ 33} Because the ordinance is rationally related to legitimate governmental interests and does not arbitrarily and unreasonably discriminate between similarly situated individuals, it does not violate the Equal Protection Clause. Consequently, we overrule the association's fifth assignment of error.
 IMPAIRMENT OF CONTRACT {¶ 34} In its sixth assignment of error, the association argues that the ordinance is unconstitutional because it "compels lease termination in violation of the constitutional prohibition against impairment of contract." The association argues that the ordinance allows the building commissioner to terminate existing leases of at least three years by "requiring that the Landlord evict these long-term tenants based on nothing more" than a single violation of the building code appearing on a checklist. This assignment of error is not well taken.
 {¶ 35} Both the United States Constitution and the Ohio Constitution have clauses prohibiting the government from passing any laws "impairing the obligations of contracts."[38] Simply because an ordinance has a detrimental impact on contracts does not mean that it is unconstitutional. A balancing test must be applied.[39] A court must determine (1) whether there is a contractual relationship; (2) whether a change in the law impairs that contractual relationship; and (3) whether the impairment is substantial.[40]
 {¶ 36} The ordinance in this case does not substantially impair existing leases between landlords and tenants in the village. At the time they entered into those leases, the parties were already subject to the Ohio Landlord-Tenant Act, which sets forth the responsibilities of both landlords and tenants. As we have already stated, R.C. 5321.19
provided that those leases were subject to applicable housing and building codes. The village had already enacted a building code; the ordinance only changed the method of enforcement. Thus, the parties to leases were aware of the need to comply with the building code.
 {¶ 37} Further, the Contract Clause does not prevent state and local governments from exercising their police powers, which are generally paramount to any rights under contracts between individuals.[41] In this case, the ordinance is a valid exercise of the village's police powers and does not so substantially violate the contractual rights of individuals that it is rendered unconstitutional. Therefore, we overrule the association's fifth assignment of error.
 DUE PROCESS {¶ 38} In its second assignment of error, the association contends that the ordinance deprives owners and tenants of rental units of due process of law. It argues that because the ordinance terminates a residential lease without providing for an administrative stay, a prompt appeal, and an appeal deadline, it does not provide those affected by the ordinance with adequate procedural protections. This assignment of error is well taken.
 {¶ 39} Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests.[42] "Due process is flexible and calls for such procedural protections as the particular situation demands."[43] Its fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner.[44]
 {¶ 40} The members of the association have a constitutionally protected property interest in running their residential leasing businesses free from unreasonable and arbitrary interference from the government.[45] Therefore, we must determine whether the procedural safeguards provided by the ordinance are sufficient to comply with the requirements of due process.[46]
 {¶ 41} To determine what process is due, we apply the balancing test set forth in Matthews v. Eldridge.[47] That test requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[48]
 {¶ 42} We have already determined the private interest that is affected by the ordinance: the landlords' ability to run their businesses. If the building commissioner fails to issue a rental permit, a landlord must cease renting or seeking to rent a unit and cause it to be vacated. The landlord could suffer a significant disruption of his or her business without any hearing prior to the deprivation or any way to contest the commissioner's determination that certain defects must be remedied before the issuance of a rental permit. We deem the landlords' interest to be significant.[49]
 {¶ 43} We must now look at the second factor — the risk of an erroneous deprivation and the probable value of additional or substitute safeguards. The ordinance in this case provides only two procedural safeguards. It allows for one 30-day conditional permit, and it states that a landlord affected by a decision of the building commissioner may file an appeal with the Board of Building Appeals within 30 days of receiving written notice of the commissioner's action.
 {¶ 44} This court has stated that due process generally requires some type of hearing prior to the deprivation of a significant property interest.[50] In this case, the ordinance provides no predeprivation hearing. A property owner may appeal the commissioner's actions only after they havebeen taken. Thus, with no review of the commissioner's decision prior to the action taken, a substantial risk of an erroneous deprivation exists.[51]
 {¶ 45} In some circumstances, post-deprivation review can cure the lack of a predeprivation hearing.[52] But the failure to provide an avenue for prompt review of the governmental action would violate due process.[53] Also, the failure to provide adequate hardship relief can also violate due process.[54]
 {¶ 46} In this case, though the ordinance does provide for the filing of an appeal, it provides no time frame for deciding the appeal or for a stay of the commissioner's decision longer than 30 days. The village acknowledges that the Board of Building Appeals has no scheduled time for meetings. Instead, it meets on a case-by-case basis. Nothing in the ordinance requires the case to be heard before the expiration of the 30-day conditional permit. A delay in holding the hearing could cause a property owner to incur substantial expense in making the repairs required by the commissioner or in ceasing to rent the property. It could also open a property owner to lawsuits from tenants who have to vacate the premises. All of these consequences can occur with no determination by an objective body whether the violations are legitimate and the repairs justified. Thus, the ordinance provides no avenue for a property owner to be heard in a meaningful time and a meaningful manner.
 {¶ 47} Similar statutory schemes that courts have found to be constitutional have more detailed appellate provisions than those provided in the ordinance in this case. In Jones v. Wildgen, the ordinance in question placed restrictions on rental units in single-family zoning districts and imposed a permit requirement on landlords. It also required the city to notify the owner of rental property of any violation of the ordinance. The owner was entitled to a hearing within fifteen days of receiving the notice, and a request for a hearing stayed all enforcement proceedings.[55]
 {¶ 48} In Plassman v. Wauseon,[56] a building code required the city to provide notice to the property owner of violations. It also required the notice to include a time and place for an administrative hearing before a hearing officer. The code allowed the property owner to present evidence at the hearing to refute the facts in the notice. The hearing officer could confirm the building code administrator's decision and provide a reasonable time to abate the violations, refute the findings and revoke the administrator's work order, or modify any part of the work order, including the reasonable time of completion. Additionally, any person affected by the enforcement of the code could bypass that hearing and appeal directly to the board of zoning appeals within fifteen days of the notice, without waiting for the hearing before the hearing officer.[57]
 {¶ 49} The village in this case does have significant interests in regulating rental property and its attendant problems, in requiring safe housing, and in maintaining the community's aesthetics.[58]
Nevertheless, those interests are not served by the failure to provide for a prompt appeal process. To the contrary, resolving housing disputes quickly and making sure that legitimate violations of the building code are remedied as soon as possible are also in the village's interest. Further, since due process requires an appeal process, specifying a time for a hearing does not pose an undue additional administrative or financial burden.
 {¶ 50} We hold that the failure to provide specific times for the appeal process and a longer stay of enforcement renders this ordinance unconstitutional. The governmental interest does not outweigh the private interest and the attendant risk of the erroneous deprivation of property owners' interests in their rental businesses. The ordinance is therefore unconstitutional because it violates the Due Process Clause.
 {¶ 51} Further, the lack of due process infects the entire ordinance. The unconstitutional provisions so disrupt the statutory scheme that they cannot be severed from those that are constitutional.[59]
Consequently, we must declare the ordinance unconstitutional in toto. We sustain the association's second assignment of error, reverse the trial court's judgment, and enter final judgment declaring the ordinance to be unconstitutional.
Judgment accordingly.
PAINTER, P.J., and HENDON, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] Hudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69, 71,458 N.E.2d 852; State v. Ramirez, 1st Dist. No. C-050981,2006-Ohio-5600, ¶ 10.
[2] State v. Collier (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552;Ramirez, supra, at ¶ 10.
[3] Shroades v. Rental Homes, Inc. (1981), 68 Ohio St.2d 20, 25,427 N.E.2d 774.
[4] Stewart v. Kalman (Aug. 16, 1982), 4th Dist. No. 1109.
[5] Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted,65 Ohio St.3d 242, 244, 1992-Ohio-65, 602 N.E.2d 1147; Rispo Realty Dev.Co. v. Parma (1990), 55 Ohio St.3d 101, 102-103, 564 N.E.2d 425.
[6] See Beachwood v. Simon (Dec. 16, 1993), 8th Dist. No. 64483.
[7] Whalen v. Roe (1977), 429 U.S. 589, 599-600, 97 S.Ct. 869;State ex rel. Plain Dealer Publishing Co. v. Cleveland,75 Ohio St.3d 31, 34, 1996-Ohio-379, 661 N.E.2d 187.
[8] State v. Williams, 88 Ohio St.3d 513, 525-526, 2000-Ohio-428,728 N.E.2d 342.
[9] Cox Broadcasting Corp. v. Cohn (1975), 420 U.S. 469, 494-495,95 S.Ct. 1029; Williams, supra, at 526.
[10] Plain Dealer Publishing Co., supra, at 34-35; State ex rel.Thomas v. Ohio State Univ., 71 Ohio St.3d 245, 248, 1994-Ohio-261,643 N.E.2d 126; Ohio Domestic Violence Network v. Pub. Util. Comm.,70 Ohio St.3d 311, 318-319, 1994-Ohio-165, 638 N.E.2d 1012;
[11] Shibley v. Time, Inc. (1975), 45 Ohio App.2d 69, 72-73,341 N.E.2d 337; Lamont v. Commr. of Motor Vehicles (S.D.N.Y.1967),269 F.Supp. 880, 883-884.
[12] Williams, supra, at 526.
[13] State ex rel. Fisher v. Cleveland, 109 Ohio St.3d 33,2006-Ohio-1827, 845 N.E.2d 500, ¶ 27-32; Plain Dealer PublishingCo., supra, at 34-35.
[14] Stone v. Stowe (1992), 64 Ohio St.3d 156, 162,593 N.E.2d 294.
[15] R.C. 149.43(B); State ex rel. Cincinnati Enquirer v. Sharp,151 Ohio App.3d 756, 2003-Ohio-1186, 785 N.E.2d 822, ¶ 5.
[16] See Davis v. Cincinnati Enquirer, 164 Ohio App.3d 36,2005-Ohio-5719, 840 N.E.2d 1150, ¶ 8.
[17] See Stone, supra, at 162-163.
[18] Norwood v. Horney, 110 Ohio St.3d 353, 2006-Ohio-3799,853 N.E.2d 1115, ¶ 84; Williams, supra, at 532.
[19] Williams, supra, at 532.
[20] State v. Anderson (1991), 57 Ohio St.3d 168, 173,566 N.E.2d 1224; State v. Lance (Feb. 13, 1998), 1st Dist. Nos. C-970301, C-970282, and C-970283, affirmed (1998), 84 Ohio St.3d 17, 701 N.E.2d 692.
[21] Williams, supra, at 532-533.
[22] See Kolendar v. Lawson (1983), 461 U.S. 352, 358, 103 S.Ct. 1855;Lance, supra.
[23] See, e.g., Abdalla's Tavern v. Dept. of Comm., 7th Dist. No. 02 JE 34, 2003-Ohio-3295, ¶ 81-83; McMaster v. Akron Housing AppealsBd. (July 20, 1994), 9th Dist. No. 16665; Bloomsburg Landlords Assn.,Inc. v. Bloomsburg (M.D.Pa.1995), 912 F.Supp. 790, 801-802.
[24] State v. Thompson, 95 Ohio St.3d 264, 266, 2002-Ohio-2124,767 N.E.2d 251; Amer. Assn. of Univ. Professors v. Central State Univ.,87 Ohio St.3d 55, 59, 1999-Ohio-248, 717 N.E.2d 286; Lance, supra.
[25] Cleburne v. Cleburne Living Ctr., Inc., (1985), 473 U.S. 432,439, 105 S.Ct. 3249.
[26] Menifee v. Queen City Metro (1990), 49 Ohio St.3d 27, 29,550 N.E.2d 181; Lance, supra.
[27] Adamsky v. Buckeye Local Sch. Dist., 73 Ohio St.3d 360, 362,1995-Ohio-298, 653 N.E.2d 212; Lance, supra.
[28] Lakewood v. Novak (M.C.2000), 111 Ohio Misc. 1, 4,746 N.E.2d 719.
[29] Hill Constr. Co. v. Connecticut (D.Conn.1973), 366 F.Supp. 737,740, quoting Berman v. Parker (1954), 348 U.S. 26, 32-33,75 S.Ct. 98.
[30] Hudson, supra, at paragraph one of the syllabus; Cleveland v.Grice (Oct. 6, 1994), 8th Dist. No. 66898.
[31] Berry v. Little Rock (E.D.Ark.1995), 904 F.Supp. 940, 949, affirmed without opinion (C.A.8, 1996), 94 F.3d 648
[32] Id at 949; Anders v. Norristown (Oct. 22, 1997), E.D.Pa. No. 97-CV-2026.
[33] Lakewood, supra, at 4.
[34] Mahoning Valley Landlords Assn. v. Youngstown (Aug. 11, 1992), 7th Dist. No. 91 C.A. 28; Anders, supra.
[35] Railway Express Agency, Inc. v. New York (1949), 336 U.S. 106,110, 69 S.Ct. 463.
[36] Berry, supra, at 949.
[37] Belvoir Cliffs Apartments, Ltd. v. Cleveland (Aug. 16, 1979), 8th Dist. No. 39055; Hill Constr. Co., supra, at 740-741; Berry, supra, at 949.
[38] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, ¶ 9-10; King v. Safeco Ins. Co. (1990),66 Ohio App.3d 157, 161, 583 N.E.2d 1051.
[39] Prof. Investments of Am., Inc. v. McCormick (C.P.1984),14 Ohio Misc.2d 1, 3, 469 N.E.2d 1357.
[40] Bd. of Trumbull Cty. Commrs. v. Warren (2001),142 Ohio App.3d 599, 602-603, 756 N.E.2d 690.
[41] Allied Structural Steel Co. v. Spannaus (1978), 438 U.S. 234,241-242, 98 S.Ct. 2716; Prof. Investments, supra, at 3-4.
[42] Matthews v. Eldridge (1976), 424 U.S. 319, 332, 96 S.Ct. 893;Lance, supra.
[43] Matthews, supra, at 334, quoting Morrisey v. Brewer (1972),408 U.S. 471, 481, 92 S.Ct. 2593.
[44] Matthews, supra, at 333; State v. Cowan, 103 Ohio St.3d 144,2004-Ohio-4777, 814 N.E.2d 846, ¶ 8.
[45] Asher Investments, Inc. v. Cincinnati (1997),122 Ohio App.3d 126, 136, 701 N.E.2d 400.
[46] See State v. Hochhausler, 76 Ohio St.3d 455, 459, 1996-Ohio-374,668 N.E.2d 457.
[47] Id. at 460; Jones v. Cleveland, 152 Ohio App.3d 278,2003-Ohio-1534, 787 N.E.2d 666, ¶ 10.
[48] Matthews, supra, at 335.
[49] See Jones v. Wildgen (D.Kan.2004), 320 F.Supp.2d 1116, 1127.
[50] Asher, supra, at 136.
[51] See Cowan, supra, at ¶ 13.
[52] See Hochhausler, supra, at 461-462; Jones v. Cleveland, supra, at ¶ 14.
[53] Cowan, supra, at ¶ 13; Hochhausler, supra, at 466; Mayfield Hts.v. Buckner (Oct. 3, 1996), 8th Dist. No. 69221.
[54] Hochhausler, supra, at 461.
[55] Jones v. Wildgen, supra, at 1127-1128.
[56] 6th Dist. No. F-02-026, 2003-Ohio-897.
[57] Id. at ¶ 15-16.
[58] Hudson, supra, at paragraphs one and two of the syllabus;Grice, supra; Mahoning Valley Landlords Assn. v. Youngstown (Aug. 11, 1992), 7th Dist. No. 91 C.A. 28; Lakewood v. Novak, supra, at 4;Berry, supra, at 948-949; Hill Construction Co., supra, at 740.
[59] See State ex rel. Maurer v. Sheward, 71 Ohio St.3d 513, 523-524,1994-Ohio-496, 644 N.E.2d 369.